## JAMES J. MURPHY, PROSECUTOR, v. FREEHOLDERS OF HUDSON, RESPONDENT.

Argued January 15, 1918—Decided January 29, 1918.

1. By the provisions of section 1 of the act of 1906 (*Pamph. L., p. 13*), a person elected or appointed to any office in any town, township, borough or other municipality is required to take an oath before entering on the duties of his office that he will faithfully and impartially discharge the duties thereof and to file the same with the clerk of the municipality in which he shall have been elected or appointed. *Held*, that the language "other municipality" is broad enough to include counties.
2. Where an oath of office is required, it is a prerequisite to full investiture with the office, and where an officer, elected to a county office, failed to take the oath until the day his successor was elected, there was a vacancy in the office in question, and that taking of the oath at that time was not a cure of the defect, as section 2 of the act of 1906 (*Pamph. L., p. 13*) only authorizes the taking of the oath before the commencement of the term.
3. Resolutions of the board of freeholders, claimed by prosecutor to stand in his way of asserting title to the office, under the circumstances narrated, will not be set aside on *certiorari*.

On *certiorari*.

Before Justice SWAYZE, by consent.

*Gilbert Collins* and *James J. Murphy, pro se.*

*Contra, John J. Fallon.*

The opinion of the court was delivered by

SWAYZE, J. The prosecutor seeks to set aside certain resolutions which stand in the way of his asserting his title to the office of counsel of Hudson county. He is still in possession of the office. The case is within the rule of *Moore* v. *Borough of Bradley Beach*, 87 *N. J. L.* 391; *certiorari* is a proper remedy unless the defendant's preliminary objection is valid that by reason of the failure of the prosecutor to take and file an official oath the office was vacant when the resolution was

passed and his successor appointed. The prosecutor claims that he was elected county counsel in December, 1916. No oath of office was taken until January 7th, 1918, an hour or two before his successor was elected. This oath was filed the same day with the clerk of the board of freeholders. The statutory provision as to the oath on which the defendant relies is the act of 1906. *Pamph. L., p.* 13; *Comp. Stat., p.* 3491, § 137.

A question arises as to the applicability of this statute to county offices. The act requires persons elected or appointed to any office in any town, township, borough or other municipality to take an oath before entering on the duties of his office and to file it with the clerk of the municipality in which he shall have been elected or appointed. The specific question is whether the words "other municipality" were meant to include counties. That the word "municipality" sometimes include counties has been decided. *Union Stone Co. v. Freeholders of Hudson*, 71 *N. J. Eq.* 657; *Herman and Grace v. Freeholders of Essex, Id.* 541; *affirmed on opinion,* 73 *Id.* 415. Both of these cases were cited recently by this court in considering the meaning of the words "municipal board or body." *Burtis* v. *Haines, ante p.* 4.

I do not attribute much importance in this case to the argument that the words with which the words "other municipalities" are here associated denote municipal corporations of a different character from counties. The broad connotation of "towns" is sufficiently demonstrated by the decision in *Van Riper* v. *Parsons*, 40 *N. J. L.* 1. I am more impressed by the contention that the act of 1906 should be limited because it was evidently intended for the relief of a situation that had arisen in boroughs. *Smith* v. *Petty*, 73 *Id.* 333. The force of this argument is lessened by the fact that while the difficulty to be cured had arisen in boroughs, the relief was extended by name to towns and townships, and also to the more indefinite, or, at any rate, wider class, "other municipalities." This indicates that the legislature meant to pass an act that would afford relief wherever the difficulty arose. This, perhaps, explains the language of section 2—that is,

"any of the municipalities mentioned in the first section of this act, *or of this state.*" Such general language as "municipalities of this state" ought to be held to include all municipalities which might chance to need the remedy. It seems at least possible that a county officer might fail to take the oath at the proper time and yet might take it before his term began and thus bring himself within the healing of section 2.

Where an oath is required, it is a prerequisite to full investiture with the office. *Manahan* v. *Watts,* 64 *N. J. L.* 465; *Hayter* v. *Benner,* 67 *Id.* 359. If I am right, there was a vacancy in the office now in question from December, 1916, to January 7th, 1918. This was not cured by the taking of the oath at eleven A. M. on January 7th, 1918. Section 2 only authorized the taking of the oath before the commencement of the term. The particular case which led to the statute was a case where the legislature had declared that in case of failure to take the oath, the office should be vacant. If in a case where there was no such provision, the oath might be taken at any time, no curative statute would have been necessary. The fact that the legislature passed a curative statute is persuasive that in its judgment there would, in the absence of a statute, be a vacancy. It is manifestly desirable that public officers should act under the sanction of an official oath, and there is no hardship in treating their failure to take an oath as equivalent to a vacation of the office, especially as it is probable that the taking of the oath is in most cases the only formal acceptance of the office.

No harm comes to the public since the acts of *de facto* officers are valid as to outsiders. *Rosell* v. *Board of Education,* 68 *N. J. L.* 498; *affirmed on opinion,* 70 *Id.* 336; *Anderson* v. *Myers,* 77 *Id.* 186.

The *certiorari* will be dismissed, with costs.