STATE OF NORTH DAKOTA EX REL. SVEINBJORN JOHNSON, Attorney General, and R. B. Murphy, Respondents, v. J. I. CAHILL, Appellant.

(193 N. W. 938.)

**States — failure to qualify as member of administration board held to create vacancy and work forfeiture of right to office.**

The failure of an appointive member of the board of administration to file his oath of office with the secretary of state within the time prescribed by law, creates a vacancy in such office and works a forfeiture of all right thereto on the part of the person who has so neglected to file his oath of office.

Opinion filed May 22, 1923.

States, 36 Cyc. p. 859 n. 22.

Appeal from the District Court of Burleigh County, *Coffey,* J.

Action brought by the state of North Dakota on the relation of Sveinbjorn Johnson, attorney general, and R. B. Murphy, against J. I. Cahill, to try title to the office of member of the board of administration.

Judgment for the plaintiff.

Defendant appeals.

Affirmed.

*Charles L. Crum* and *William Langer,* for appellant.

Even though defendant had inadvertently omitted to file or even take an oath of office that fact would not create a vacancy in the office. 8 Am. & Eng. Enc. Law, p. 788 says:

"Defect in qualification does not ipso facto work a forfeiture of office." Sprowl v. Lawrence, 33 Ala. 674; Crawford v. Howard, 9

Ga. 314; State v. Jackson, 27 La. Ann. 541; Clark v. Ennis, 45 N. J. L. 69. Compare Hoagland v. Culvert, 20 N. J. L. 387. See also State v. Potts, 4 N. J. L. 396; Cronin v. Gundy, 16 Hun, 524; Kelly v. State, 25 Ohio St. 567.

A statutory requirement that a bond or oath of office must be executed and filed within a certain number of days is merely directory and the bond and the oath of office may be lawfully filed on a subsequent day. Duntley v. Davie, 42 Hun, 229; McRoberts v. Winant, Abb. Pr. N. S. 210; People v. Holley, 12 Wend. 481; Com. v. Read, 2 Ashm. 261; State v. Churchill, 41 Mo. 41; State v. Texas Co. Ct. 44 Mo. 230; Kearney v. Andrews, 10 N. J. Eq. 70; State v. Porter, 7 Ind. 204; Smith v. Kronkhite, 8 Ind. 134; State v. Peck, 30 La. 280.

"The term of the office of recorder is four years. M. A. Sweet was returned as elected by the board created by law to ascertain that fact, and the commission issued by the acting governor is conclusive of that fact in all cases, except where the election has been contested, within the time fixed by law. This is the well-settled jurisprudence of this state. Therefore, the appointment by the governor of Jackson was made in error, and it is null and void." Leonard v. Jackson, 27 La. Ann. 541.

"In the case cited it was held that the legislature could not, even by an express statute, create a vacancy in a constitutional office; and, certainly, if the legislature cannot create a vacancy in a constitutional office, a board of commissioners cannot, by a ministerial or legislative act, create a vacancy in an office created by the legislature. If such a board assumes to declare a legislative office vacant, it assumes to exercise a *judicial power,* and in all cases where its decisions are judicial, there is a right of appeal." Stocking v. State, 7 Ind. 326.

*Sveinbjorn Johnson,* Attorney General, and *Geo. F. Shafer* and *Geo. I. Reimestad,* Assistant Attorney Generals, for respondents.

"A wide scope, a large liberty, is thus given to the form of the oath, but some form remains essential. . . . To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath." O'Reilly v. People, 86 N. Y. 154; 20 R. C. L. p. 508, § 4.

COOLEY, District J. This is a civil action brought by the state upon the relation of the attorney general and R. B. Murphy against J. I. Cahill, to determine the title to the office of member of the board of administration as between said R. B. Murphy and the defendant J. I. Cahill. The trial court made findings and conclusions in favor of the plaintiff. Judgment was entered accordingly and the defendant has appealed.

The material facts are as follows: On January 1st, 1921, the defendant Cahill was appointed by the then governor to fill a vacancy caused by the resignation of one Casey. On January 5th, 1921, Cahill duly qualified by taking and filing the requisite oath of office. His term of office expired July 1st, 1921. On or about August 1921, he was reappointed as a member of the board of administration for a term commencing July 1st, 1921, and ending July 1st, 1927. The defendant continued to exercise the functions of said office until on or about Feb. 27th, 1922, at which time the governor made an order declaring a vacancy to exist in the office for the reason that the defendant had failed to qualify for such office under the appointment made for the term commencing July 1st, 1921, and ending July 1st, 1927. On February 28th, 1922, the defendant tendered an oath of office for filing, but the secretary of state refused to receive and file it. Thereafter, on the 13th day of March, 1922, the governor appointed the relator, R. B. Murphy, to the said office of member of the board of administration, and said Murphy did forthwith on that same day duly qualify by taking and filing the required oath of office and furnishing, through the state bonding department, the proper bond.

The trial court found: "That the defendant J. I. Cahill on or about the 1st day of August, A. D., 1921, signed and subscribed a written instrument in the form of an oath of office; but that the said J. I. Cahill never took such oath, nor any oath nor was any oath ever administered to the said J. I. Cahill by any officer; and that the said J. I. Cahill never filed or deposited with the secretary of state, nor tendered for filing and depositing, subsequent to the said second appointment and prior to the 28th day of February, A. D., 1922, any oath for said office."

The entire controversy hinges upon this finding.

It is contended by the appellant:

1. That this finding is not supported by the evidence; and,

49 N. D.—57.

2. That in any event the statutory requirement that an oath of office be filed is directory only; that the failure to comply therewith did not *ipso facto* forfeit the title to the office; and that consequently the actions of the governor, declaring a vacancy and appointing a successor, are mere nullities.

So far as the first question is concerned, we are all agreed that the finding of the trial court that the defendant did not file an oath of office with the secretary of state is fully sustained by the evidence. The deputy secretary of state and the various employees in that office having such matters in charge were placed on the stand as witnesses and testified specifically that the oath of office had never been filed. The testimony on the part of the defendant tending to show that he did file such oath of office is not at all satisfactory. The evidence bearing on this question consisted of oral testimony. The testimony was not taken by deposition, but the witnesses appeared in flesh and blood before the trial judge. He saw them on the stand and heard their respective stories as given. He had the benefit not only of the spoken word, which is recorded on the printed page, but of the demeanor of the witnesses while they told their stories. The trial judge who had this advantage found in favor of the plaintiff. Upon the record before us we see no reason for disturbing such findings.

The second question presented involves a consideration and construction of the statutes of this state relating to the filing of an oath of office by an appointive member of the state board of administration, and the effect of failure to so do.

The statutes creating the board of administration provides that "the appointive members of said board . . . shall take the oath of office and qualify in the same manner as other state officials." Laws 1919, § 2, chap. 71.

The statutes bearing upon the subject of qualifying for office by state officers provide as follows (Comp. Laws 1913):

Section 661. "Each civil officer in this state before entering upon the duties of his office shall take and subscribe the oath prescribed in section 211 of the constitution. Such oath shall be indorsed upon the back of or attached to his bond, in case of an officer required to give bond, or indorsed upon the back of or attached to the commission, appointment or certificate of election, in case of an officer not required to give bond."

Section 662. "The bonds of all state and district officers shall be given to the state, shall be approved by the governor as to sufficiency and by the attorney general as to form, and such bonds, and a duplicate original of the oaths of all other such officers shall be deposited in the office of the secretary of state. The secretary of state shall keep a book in which shall be made a correct copy of such bond, which book shall be called the 'bond record' . . . ."

Section 681. "When the incumbent of an office is re-elected he shall qualify as above required. . . ."

Section 683. "Every office shall become vacant on the happening of either of the following events:

"1. Death of the incumbent.

"2. His insanity judicially determined.

"3. His resignation.

"4. His removal from office.

"5. His failure to discharge the duties of his office, when such failure has continued for sixty consecutive days, except when prevented from discharging such duties by sickness or other unavoidable cause.

"6. His failure to qualify as provided by law.

"7. His ceasing to be a resident of the state, district, county or township in which the duties of his office are to be discharged, or for which he may have been elected.

"8. His conviction of a felony or of any offense involving moral turpitude or a violation of his official oath.

"9. His ceasing to possess any of the qualifications of office prescribed by law.

"10. The decision of a competent tribunal declaring void his election or appointment."

Section 9300. "Every person who executes any of the functions of a public office *without having taken and duly filed the required oath of office,* or without having executed and duly filed the required security, is guilty of a misdemeanor; and in addition to the punishment prescribed therefor, he *forfeits his rights to the office.*"

Section 9301. "The last section shall not be construed to affect the validity of acts done by a person exercising the functions of a public office in fact, when other persons than himself are interested in maintaining the validity of such acts."

Section 9316. "Every person who having been an executive officer, wilfully exercises any of the functions of his office after his term of office has expired and a successor has been duly elected or appointed, and has qualified in his place, and he has notice thereof, is guilty of a misdemeanor."

Section 9318. "The various provisions of this chapter which relate to executive officers apply in relation to administrative officers in the same manner as if administrative and executive officers were both mentioned together."

It will be noted that the act creating the office in controversy here, specifically provides that an incumbent of such office "shall take the oath of office and qualify in the same manner as other state officials." Laws 1919, chap. 71, § 2. Section 661, Comp. Laws, 1913, expressly requires each civil officer of the state, before entering upon the duties of his office to "take and subscribe the oath of office prescribed in section 211 of the Constitution." That section further provides that in case the officer is required to furnish a bond, the oath of office shall be indorsed upon the back of or attached to the bond; and in case the officer is not required to furnish a bond that then the oath of office shall be indorsed upon the back of or attached to the commission of appointment or certificate of election. The following section—§ 662, Comp. Laws, 1913—provides for the filing of official bonds with the secretary of state, and the deposit with him of a duplicate original of the oaths of office of all officers not required to furnish bonds. In other words the section requires that the bonds, with the attached oath of office, of all state and district officers required to furnish bonds shall be delivered to the secretary of state for record; and that a duplicate original of the oath of all officers not required to furnish bonds shall be deposited with the secretary of state. That seems to be the plain reading of the statute, and has been the interpretation placed upon it during tthe course of the years. The legislative intention that the oath of office must be filed with the secretary of state is also evidenced by § 9300, supra, which inhibits every person from executing any of the functions of a public office, "without having taken and *duly filed* the required oath of office."

The legislative requirement with regard to the filing of the oath of office was not in any manner affected by the State Bonding Fund Act.

That act did not relate to the oath of office, but to the manner of furnishing surety upon official bonds, and, as has been noted, the law requires the oath of office to be filed as well where no bond is required to be furnished as where a bond is required.

This is not a case where an officer in qualifying has inadvertently failed to comply literally with the statute, as for instance, by filing a defective oath of office; but this is a case where there was not even an attempt on the part of the officer to qualify within the time prescribed by the statute.

It is contended by appellant's counsel, however, that statutory provisions like §§ 660, 661, 681 and 683, supra, are merely directory and that the failure to comply therewith does not *ipso facto* create a vacancy or forfeit the right to the office, but that such failure constitutes merely a ground which may be made a basis for forfeiture and enforced as such in a proper judicial proceeding. In support of this contention certain authorities are cited, and especial reliance is placed upon the decision of the supreme court of Washington in State ex rel. Lysons v. Ruff, 4 Wash. 234, 16 L.R.A. 140, 29 Pac. 999. That case involved a statute quite similar to § 683, supra, but apparently there was no statute in force in Washington similar to § 9300, supra. The case was decided by a divided court—the majority decision being supported by three of the five judges. Two of the judges dissented. The majority members held that the statute was directory and that the failure to qualify by filing the oath of office and bond within the time prescribed by the statute did not, of itself, work a forfeiture of the right to the office, but simply authorized the proper authority to declare such forfeiture and fill the office by appointment. In reaching this conclusion the majority members invoked the doctrine "that forfeitures are abhorred by the courts, and that when it is reasonably possible to construe the law so as to avoid a forfeiture, such construction will be adopted." The very principle, therefore, which the court made the controlling one in the Washington case has no application here, for here we are dealing with statutes which not only provide that the failure to qualify for office, by taking and filing the required oath of office, shall create a vacancy in such office (a vacancy which the statute makes co-ordinate with one caused by the death or resignation of the incumbent) but which further specifically declare that "every person who executes any of the functions of a public

office without having taken and duly filed the oath of office . . . is guilty of a misdemeanor; and in addition forfeits his right to the office." Comp. Laws, 1913, § 9300.

There can be no mistake as to the meaning of these statutes. It is difficult to understand how the legislature could more clearly have expressed its intention that the failure to take and file the required oath of office shall ipso facto create a vacancy in such office and work a forfeiture of all right to the office involved.

No case has been called to our attention where statutory provisions, like ours, have been construed as merely directory, or as affording merely a ground for forfeiture, available only when enforced in a proper judicial proceeding. On the contrary, statutes far less emphatic in their provisions than our own have been construed as mandatory and as fixing conditions precedent to the right to enter upon the office; and the right to the office itself held lost by a failure to perform the conditions within the time limited. See State ex rel. Berge v. Lansing, 46 Neb. 514, 35 L.R.A. 124, 64 N. W. 1104, 1109. See also State ex rel. Egan v. Schram, 82 Minn. 420, 85 N. W. 155; State ex rel. Bennetts v. Duncan, 47 Mont. 447, 133 Pac. 109; Murphy v. Hudson, 91 N. J. L. 40, 102 Atl. 896.

The judgment of the district court is affirmed.

BRONSON, Ch. J., and CHRISTIANSON and BIRDZELL, JJ., and BURR, Dist. J., concur.

Mr. Justice NUESSLE, and Mr. Justice JOHNSON, being disqualified, did not participate; Honorable CHAS. M. COOLEY, Judge of the First Judicial District, and Honorable A. G. BURR, Judge of the Second Judicial District, sitting in their stead.